IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01269-PAB

ROBERT CASS,

      Applicant,

v.

WARDEN MYLARID-ST, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

ORDER OF DISMISSAL

---

      Applicant Robert Cass is a prisoner in the custody of the Colorado Department

of Corrections who currently is incarcerated at the Sterling, Colorado correctional

facility.  Mr. Cass initiated this action by filing *pro se* an application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  On August 26, 2008, he filed an amended

habeas corpus application.  On September 10, 2008, Mr. Cass filed a second amended

application [Docket No. 11] asserting nineteen claims.  He challenges the validity of his

convictions and sentences in Case Nos. 99CR811 and 99CR1278 in the District Court

of Mesa County, Colorado.  Mr. Cass has been granted leave to proceed *in forma*

*pauperis* pursuant to 28 U.S.C. § 1915.

      On September 17, 2008, Magistrate Judge Boyd N. Boland ordered

Respondents to file within twenty days a pre-answer response to the second amended

application that was limited to addressing the affirmative defenses of timeliness under

28 U.S.C. § 2244(d) and/or exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  On September 30, 2008, Respondents filed their pre-answer response [Docket No. 15] to the second amended application.  On October 24, 2008, the Court granted Mr. Cass' request for an extension of time up to and including November 6, 2008 to file a reply, which he failed to file.

On December 9, 2008, the Court dismissed claims one through four, six, eight through ten, twelve, and fourteen through seventeen as procedurally barred and ordered that the case be drawn to a district judge for further proceedings regarding exhausted claims five, seven, eleven, thirteen, eighteen, and nineteen.  On December 11, 2008, the Court ordered Respondents to file an answer by January 2, 2009.  Respondents filed their answer [Docket No. 22] on December 26, 2008.

In considering Mr. Cass' filings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the

2

same standard to counsel licensed to practice law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  For the reasons stated below, the Court will dismiss pending claims five, seven, eleven, thirteen, eighteen, and nineteen.

## I.  Factual and Procedural Background

Mr. Cass was charged in Case No. 99CR811 with one count of theft, two counts of first-degree aggravated motor vehicle theft, and two habitual criminal counts.  He was charged in Case No. 99CR1278 with two counts of forgery of a commercial check, one count of theft, and two habitual criminal counts.  Mr. Cass entered into a plea agreement to resolve the charges in both cases.  He agreed to plead guilty in Case No. 99CR811 to one count of attempted first-degree aggravated motor vehicle theft and two habitual criminal counts and in Case No. 99CR1278 to one count of forgery and two habitual criminal counts.  The plea agreement also provided that the sentences in both cases would be concurrent with each other and with a sentence in a case in Montana.  Mr. Cass was sentenced to nine years in prison in each Colorado case.

Shortly after his sentencing, Mr. Cass filed motions to withdraw his guilty pleas because the condition that the Colorado sentences would run concurrently with the Montana sentence could not be carried out.  After a hearing, the trial court granted the motions to withdraw the guilty pleas, and Mr. Cass proceeded to trial on the initial charges.  Mr. Cass was convicted of all charges in separate jury trials.  He was sentenced in Case No. 99CR811 to eighteen years in prison on each count, to be served concurrently.  He was sentenced in Case No. 99CR1278 to twelve years in prison on each count, to be served concurrently with each other and consecutively to

3

the sentences in Case No. 99CR811 for a total sentence in Colorado of thirty years in prison.  The convictions and sentences were affirmed in separate decisions on direct appeal.  *See People v. Cass*, 68 P.3d 537 (Colo. App. 2002) [99CR1278] ("*Cass I*") (attached to Answer as Ex. E); *People v. Cass*, Case No. 01CA0931 (Colo. Ct. App. Nov. 14, 2002) [99CR811] ("*Cass II*") (attached to Answer as Ex. K).  The Colorado Supreme Court denied certiorari review on April 21, 2003 in both cases.

Mr. Cass next filed in each case a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  The trial court appointed conflict-free counsel, who filed amended motions.  The trial court denied the motions without a hearing.  In a joint appeal, the Colorado Court of Appeals affirmed the denial of the Colo. R. Crim. P. 35(c) motions.  *See People v. Cass*, Case No. 06CA1131 (Colo. Ct. App. Jan. 17, 2008) (attached to Answer as Ex. Q).  On May 19, 2008, the Colorado Supreme Court denied the petition for writ of certiorari Mr. Cass filed in the postconviction proceedings.

Petitioner filed this case on June 9, 2008.  On December 9, 2008, the application was dismissed in part.  The Court now will address the merits of the remaining six claims:

> 5.  Counsel was ineffective by failing to raise constitutional and statutory speedy trial challenges.
>
> 7.  Counsel was ineffective by failing to raise statutory and constitutional double jeopardy claims.
>
> 11.  Mr. Cass was denied due process by the trial court's failure to address his request for alternate defense counsel after he sought to withdraw his guilty pleas.

13.    Mr. Cass was denied due process based on his detrimental reliance on specific enforcement of the original plea agreement.

18.    The trial court erred in not allowing Mr. Cass to challenge his prior convictions, violating his right to due process, and counsel was ineffective by failing to challenge the prior convictions.

19.    The trial court erred in failing to appoint alternate defense counsel for the habitual criminal phase of the trial, violating his right to due process, and counsel was ineffective by failing to object to the trial court's refusal to appoint alternate defense counsel.

Second Amended Application at 7-8, 10-11, and 14.

## II.  Analysis

### A.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant

to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).

The threshold question pursuant to § 2254(d)(1) is whether Mr. Cass seeks to apply a

rule of law that was clearly established by the Supreme Court at the time his conviction

became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases
> where the facts are at least closely-related or similar to the case sub
> judice.  Although the legal rule at issue need not have had its genesis in
> the closely-related or similar factual context, the Supreme Court must
> have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to 28 U.S.C. § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of
> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).  "The word 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts.  *Id.* at 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

6

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Cass bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated."  *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that

its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Finally, if the state court does not address a claim on the merits, the Court must review the claim *de novo* and the deferential standards in 28 U.S.C. § 2254(d) are not applicable.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

B.  Claims

Claim Five

As his fifth claim, Mr. Cass argues that counsel was ineffective by failing to raise constitutional and statutory speedy trial challenges.  This claim is without merit.

It was clearly established when Mr. Cass was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Cass must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Mr. Cass' burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

8

Under the prejudice prong, Mr. Cass must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether Mr. Cass has established prejudice, the Court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Mr. Cass fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland*, 466 U.S. at 697.

A review of the trial record reveals that Mr. Cass' attorney raised a statutory speedy trial challenge. Mr. Cass, through counsel, asserted on direct appeal that his statutory speedy trial rights were violated under the standards set forth in Colo. Rev. Stat. § 18-1-405. *See* Answer, Ex. I (opening brief in *Cass II*) at 4-7; *see also id*., Ex. C (opening brief in *Cass I*) at 3-9. The Colorado Court of Appeals held that the statutory speedy trial claim failed because Colorado law provides for the beginning of a new speedy trial period after a defendant withdraws his guilty plea. *See* Answer, Ex. K (*Cass II*) at 2-3; *see also id.,* Ex. E (*Cass I*) at 2-3, 68 P.3d at 538-39. Therefore, because counsel raised statutory speedy trial claims on direct appeal, he could not have been ineffective for failing to raise them. To the extent Mr. Cass contends that

9

counsel was ineffective by failing to raise statutory speedy trial challenges, the claim is without merit.

In addition, the record shows that in *Cass I* Mr. Cass, through counsel, also asserted his constitutional speedy trial rights were violated.  *See* Answer, Ex. C (opening brief in *Cass I*) at 3-5.  The Colorado Court of Appeals declined to address the claim because it had not been raised in the trial court.  *See id.,* Ex. E (*Cass I*) at 3; 68 P.3d at 539.  In response to Mr. Cass' claim that trial counsel was ineffective for not raising the constitutional speedy trial issue in the trial court, the state appeals court pointed out that the ineffective-assistance claim should be presented, if at all, in a postconviction motion.  *Id.*

In the joint appeal in Case No. 06CA1131 from the denial of his postconviction motions, Mr. Cass, proceeding *pro se*, briefly asserted that his constitutional right to a speedy trial was violated and that counsel was ineffective for failing to raise a constitutional speedy trial challenge.  *See* Answer, Ex. O (opening brief) at 15, ¶ 63.

The Colorado Court of Appeals found that Mr. Cass' trial counsel was not ineffective for not making a constitutional speedy trial claim because, for the reasons stated below, such a claim would have lacked merit:

A.

In *Cass I*, the division rejected defendant's statutory speedy trial claim.  It concluded that the six-month speedy trial period set forth in section 18-1-405, C.R.S. 2007, did not begin to run until November 13, 2000, when the trial court allowed defendant to withdraw his guilty plea, and that his March 2001 trial commenced well within that period.  68 P.3d at 538.  The division declined to address defendant's contention that his constitutional right to a speedy trial was violated because the contention had not been raised in the trial court; and it held that his alternative claim that trial counsel performed ineffectively by not raising the speedy trial

issue "should be presented, if at all, by means of a postconviction motion." *Id.* at 539.

In these circumstances, we will address the merits of defendant's contention.  However, as set forth below, we conclude that defendant had no meritorious constitutional speedy trial claim and that his counsel was thus not ineffective for failing to raise the issue.

B.

A defendant's constitutional right to a speedy trial under the Sixth Amendment and Colo. Const. art. II, § 16 is distinct from the statutory speedy trial right, and the determination as to one does not necessarily dispose of the other.  *People v. Harris*, 914 P.2d 425, 430 (Colo. App. 1995).

The constitutional right to a speedy trial attaches at the time a defendant is formally accused by a charging document.  *Moody v. Corsentino*, 843 P.2d 1355, 1363 (Colo. 1993).

To assess a contention that a defendant's constitutional speedy trial right has been violated, courts are to apply an ad hoc balancing test, considering four factors: the length of the delay, the reasons for the delay, the defendant's assertion of the right, and the prejudice to the defendant. However the length of the delay must be at least presumptively prejudicial to the defendant before further inquiry into the other factors is warranted. *Id.* at 1363-64; *see People v. Fennell*, 32 P.3d 1092, 1095 (Colo. App. 2000) (no constitutional speedy trial violation where total length of delay was eleven months, delay was partially attributable to defendant, and defendant asserted no prejudice from the delay beyond being incarcerated).

Additionally, delays caused by a defendant's challenge to a conviction or guilty plea do not normally violate constitutional speedy trial rights when the defendant is promptly retried.  *See United States v. Loud Hawk*, 474 U.S. 302, 312-13 (1986) ("It has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events . . . ." (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966); although 90-month delay was presumptively prejudicial and required inquiry into other relevant factors, Court concluded those factors did not support dismissal based on claimed speedy trial violation); *Dandridge v. United States*, 265 F.2d 349, 350 (D.C. Cir. 1959) (no speedy trial violation where 23-month delay was caused by defendant's "original plea of guilty and his later efforts to

extricate himself from that plea"); *State v. Wittgenstein*, 893 P.2d 461, 466 (N.M. Ct. App. 1995) (seven-year delay caused by judicial review did not establish constitutional speedy trial violation).

Here, the information in both cases was filed April 10, 2000. Defendant withdrew his guilty pleas on November 13, 2000, and went to trial in the two cases on March 12, 2001, and March 28, 2001. Thus, between eleven and eleven and one-half months elapsed between the filing of the information and the trials. Much of the delay was attributable to defendant's decision to plead guilty and then withdraw the guilty plea. Moreover, defendant has not alleged prejudice.

In these circumstances, defendant's constitutional speedy trial rights were not violated, and his counsel was not ineffective for failing to so argue. *See Strickland*, 466 U.S. at 690-91.

Answer, Ex. Q (06CA1131) at 13-17.

Here, the state appeals court, citing to *Moody*, 843 P.2d at 1363, applied the four factors for addressing constitutional speedy trial claims and found that Mr. Cass' constitutional speedy trial rights were not violated. Notwithstanding the state court's reliance on Colorado law, the United States Supreme Court in *Early v. Packer*, 537 U.S. 3, 8 (2002), made clear that, pursuant to the Antiterrorism and Effective Death Penalty Act, there is no requirement that the state court cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* Accordingly, where, as here, there is no indication suggesting that the state court did not reach the merits of the constitutional speedy trial claim, the § 2254(d)(1) deferential standard applies, and the Court's review is limited to whether Applicant has established that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See, e.g.*, *Gipson*, 376 F.3d at 1196.

12

"A Sixth Amendment speedy trial claim is assessed by balancing:  (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant." *Jackson v. Ray*, 390 F.3d 1254, 1260 (10th Cir. 2004) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)).  Although no single factor in and of itself is sufficient to establish a Sixth Amendment speedy trial violation, the length of the delay is considered to be the "triggering mechanism" that sets into motion a court's analysis of the remaining *Barker* factors.  *Barker*, 407 U.S. at 530-31.  Because there is no bright-line rule for determining when a pretrial delay triggers a full *Barker* analysis, "the length of the delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case."  *Id.*  Adopting a sliding-scale approach, the Supreme Court has noted that, depending on the nature of the charges, delay of a trial that approaches one year is generally presumptively prejudicial.  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see also United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (holding that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice.").

Here, as summarized by the state appeals court, the information in both of Mr. Cass' cases was filed April 10, 2000.  He withdrew his guilty pleas on November 13, 2000 and went to trial in the two cases on March 12, 2001 and March 28, 2001.  Thus, between eleven and eleven and one-half months elapsed between the filing of the information and the trials, and much of the delay was attributable to Mr. Cass' decision to plead guilty and then withdraw the guilty plea.  Therefore, this eleven and one-half

month delay is not presumptively prejudicial and does not trigger an analysis of the

remaining *Barker* factors.   *See Doggett*, 505 U.S. at 651-52; *Batie*, 433 F.3d at 1290.

As such, his counsel could not have been ineffective under *Strickland* for failure

to argue a constitutional speedy trial violation.   The Colorado Court of Appeals'

determination that Mr. Cass failed to establish ineffective assistance of counsel under

*Strickland* did not result in a decision that was contrary to or an unreasonable

application of clearly established federal law.   The fifth claim lacks merit and will be

dismissed.

<u>Claim Seven</u>

Mr. Cass' seventh claim is that counsel was ineffective by failing to raise

statutory and constitutional double jeopardy claims also is meritless.

The standard for ineffective assistance of counsel claims is set forth in the above

discussion of claim five.   "[T]he Double Jeopardy Clause . . . does not relieve a

defendant from the consequences of his voluntary choice."   *United States v. Cordoba*,

71 F.3d 1543, 1546 (10th Cir. 1995) (citing *United States v. Scott*, 437 U.S. 82, 99

(1978).   "Furthermore, double jeopardy rights may be waived by agreement, even

where double jeopardy was not specifically referred to by name in the plea agreement

when the substance of the agreement is to allow for double prosecution."   *Cordoba*, 71

F.3d at 1546 (citing *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987); *United States v.

Mezzanato*, 513 U.S. 196 (1995) ("A criminal defendant may knowingly and voluntarily

waive many of the most fundamental protections afforded by the Constitution.")).

The Colorado Court of Appeals held that Mr. Cass' trial counsel could not have been ineffective for failing to raise a double jeopardy claim because double jeopardy had not been violated:

> We are . . . unpersuaded by defendant's contention that his right to be protected against double jeopardy was violated when he was retried on the original charges after the trial court accepted his plea agreement and he began serving his sentence.
>
> The Double Jeopardy Clauses of both the United States and Colorado Constitutions protect an accused against being placed in jeopardy twice for the same crime.  U.S. Const. amend. V; Colo. Const. art. II, § 18.  "Consequently, a trial court is prohibited from increasing a legal sentence once it has been imposed and the defendant  has begun serving it."  *People v. Woellhaf*, __ P.3d __, __ (Colo. App. No. 06CA0075, Oct. 04, 2007).
>
> As relevant here, jeopardy generally attaches when the court accepts a defendant's guilty plea.  *Jeffrey v. District Court*, 626 P.2d 631, 636 (Colo. 1981); *People v. French*, 165 P.3d 836, 840 (Colo. App. 2007).  However, the fact that jeopardy has attached "begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial."  *Illinois v. Somerville*, 410 U.S. 458, 467 (1973).  "The cases hold with apparent unanimity that when defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle" to reviving the charges against him.  *Fransaw v. Lynaugh*, 810 F.2d 518, 524-25 (5th Cir. 1987) (collecting cases); *see Ricketts v. Adamson*, 483 U.S. 1, 8 (1987) (Double Jeopardy Clause did not bar reprosecution for first-degree murder following defendant's breach of a plea agreement under which he had pleaded guilty to a lesser offense and had begun serving a term of imprisonment); *United States v. Olmeda*, 461 F.3d 271, 279 n.7 (2d Cir. 2006); *United States v. Baggett*, 901 F.2d 1546, 1550 (11th Cir. 1990); *Taylor v. Kincheloe*, 920 F.2d 599, 605 (9th Cir. 1990); *see also* F. M. English, Annotation, *Plea of Guilty as Basis of Claim of Double Jeopardy in Attempted Subsequent Prosecution for Same Offense*, 75 A.L.R. 2d 683 (1961).  The concern is that, out of fairness, "a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts."  *Fransaw*, 810 F.2d at 526.
>
> In *Ballensky v. People*, 116 Colo. 34, 36, 178 P.2d 433, 434-35 (1947), our supreme court applied reasoning similar to that in the cases discussed above when it rejected a defendant's contention that his double

jeopardy rights had been violated.  The defendant had entered a guilty plea and had begun serving his sentence of incarceration.  Two months later, he moved to vacate the sentence on the basis that his guilty plea was invalid.  The trial court granted the motion.  The defendant was tried on the original charges and was found guilty.  In rejecting his double jeopardy argument, the supreme court observed:  "Here, the very trial and judgment to which defendant now objects was of his own seeking.  He began his demands therefor almost a year before the district attorney sought to prevent it by prohibition in this court.  That action he vigorously and successfully contested."  Thus, he "impliedly waived former jeopardy." *Id.* at 36, 178 P.2d at 435.

Similarly here, there was no double jeopardy obstacle to retrying defendant when he successfully repudiated the plea agreement and withdrew his guilty plea.  It follows that, because defendant had no meritorious double jeopardy claim, his trial counsel did not provide deficient representation when he failed to raise such a claim.  *See Strickland v. Washington*.

Answer, Ex. Q (No. 06CA1131) at 10-13.

In holding that Mr. Cass' trial counsel was not ineffective for failing to raise a double jeopardy claim when double jeopardy was not violated, the state appeals court noted that it was Mr. Cass who repudiated his plea agreement with the prosecution when he moved to withdraw his plea.  The Colorado Court of Appeals also pointed out that the cases, including *Ricketts*, 483 U.S. at 8-10, hold with apparent unanimity that when a defendant repudiates a plea bargain, there is no double jeopardy or other obstacle to reviving the charges against him.  Nothing in the state appeals court decision is contrary to or an unreasonable application of clearly established federal law. The seventh claim lacks merit and will be dismissed.

<u>Claims Eleven, Eighteen, and Nineteen</u>

Mr. Cass asserts three claims of trial court error, two based upon the denial of his request for alternate defense counsel and one based upon the denial of his efforts

to challenge his prior convictions.  He contends he was denied due process by the trial

court's failure to address his request for alternate defense counsel after he sought to

withdraw his guilty pleas (claim eleven).  He also alleges that the trial court erred in

failing to appoint alternate defense counsel for the habitual criminal phase of the trial,

thus denying his right to due process, and that counsel was ineffective by failing to

object to the trial court's refusal to appoint alternate defense counsel (claim nineteen).

In addition, he asserts that the trial court erred in not allowing him to challenge his prior

convictions, thus denying his right to due process, and that counsel was ineffective by

failing to challenge the prior convictions (claim eighteen).

The Colorado Court of Appeals addressed these claims as follows:

> Defendant next contends that the trial court erroneously denied him
> the opportunity both to challenge his prior convictions and to establish
> justifiable excuse or excusable neglect for the untimeliness of such a
> challenge.  In a related claim, defendant argues that the trial court erred
> by not appointing conflict-free counsel to assist him in challenging his prior
> convictions.  We conclude that defendant's challenge was time barred
> and that his request for alternative counsel was, therefore, properly
> denied.

> Section 16-5-402, C.R.S. 2002, provides, as relevant here, that a
> defendant has three years from the date of conviction in which to
> commence a collateral attack.

> If a defendant's motion for postconviction relief is untimely under §
> 16-5-402, then the trial court may deny the motion without conducting a
> hearing if the defendant has failed to allege facts that, if true, would
> establish justifiable excuse or excusable neglect. *People v. White*, 981
> P.2d 624 (Colo. App. 1998).

> Here, defendant first filed a "motion for appointment of alternate
> defense counsel to review habitual criminal counts."  As grounds for his
> request, defendant stated that he was represented by a deputy public
> defender in this case and that he had been represented by another
> deputy public defender when he was convicted of one of the prior
> offenses in 1994.  The motion did not allege ineffective assistance of prior

counsel, although it suggested that such a claim might be raised in the future.  The trial court denied the motion, finding that defendant had failed to make specific allegations sufficient to support his request for conflict-free counsel.

Defendant next filed a motion asking the trial court to reconsider its ruling.  As additional grounds, defendant alleged that the deputy public defender who had represented him in the 1994 case had told him that the conviction could not be used in the future for purposes of habitual criminal charges.  The trial court reaffirmed its earlier ruling.

Defendant then filed a motion challenging the validity of the 1994 conviction.  As grounds, defendant alleged that his plea was not voluntary because it was based on the erroneous advice of counsel concerning use of the conviction for habitual criminal charges.  The prosecution filed a response asserting that defendant's motion was time barred pursuant to § 16-5-402, because it was filed more than three years after the conviction had entered.  The trial court did not rule on the motion, and defendant withdrew it when he entered his guilty plea.

It is unclear from the record whether, after withdrawing his guilty plea, defendant renewed his motion challenging his 1994 conviction.  However, it appears that he did so because the trial court addressed the issue during the habitual criminal phase of the trial.  Accordingly, we shall presume the issue was preserved.

Neither defendant's motion challenging his prior conviction nor his motion seeking alternative counsel, both filed in 2000, explain why defendant failed to challenge his 1994 conviction before the three-year limitations period of § 16-5-402 expired in 1997.  Therefore, we uphold the trial court's finding that defendant's motion was time barred.  *See People v. White*, *supra*.

Furthermore, because defendant's challenge was time barred and he does not suggest how, despite the fact that he is represented by conflict-free counsel on appeal, the appointment of alternative counsel would have better enabled him to establish justifiable excuse or excusable neglect, we also uphold the trial court's denial of defendant's request for alternative counsel.

The judgment and sentence are affirmed.

Answer, Ex. E (*Cass I*) at 3-4, 68 P.3d at 539-40.

The Colorado Court of Appeals did not address the merits of the due process claims Mr. Cass raised in the state court and asserts in the instant action. Therefore, the Court will exercise its own independent judgment in deciding the claims. *See Gipson*, 376 F.3d at 1196. Because there is no indication suggesting that the state court did not reach the merits of the ineffective assistance of counsel claims, the § 2254(d)(1) deferential standard applies and the Court's review is limited to whether Mr. Cass has established that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See id.*

To the extent Mr. Cass alleges that the trial court erred in not allowing him to challenge his prior convictions, thereby violating his right to due process, and that counsel was ineffective by failing to challenge the prior convictions (claim eighteen), the claim is without merit. The Colorado Court of Appeals upheld the trial court's decision that Mr. Cass' efforts to challenge his prior convictions were time-barred because he failed to allege facts that, if true, would establish justifiable excuse or excusable neglect. As a result of the appeals court determination, Mr. Cass believes he was denied due process. He is mistaken.

It is well established that the denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236 (1941). In order to declare a denial of due process, the Court must find that "the absence of that fairness fatally infected the trial." *Id.*; *see also Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991) (due process claims entitle applicant to relief only if the allege errors rendered the trial as a whole fundamentally unfair). The Court does not find that Mr. Cass' trial was rendered

fundamentally unfair by his being denied the ability to present a time-barred challenge to a prior conviction.  Moreover, because any challenge to the prior convictions was time-barred, Mr. Cass could not have been prejudiced by his counsel's failure to challenge the prior convictions.  *See Strickland*, 466 U.S. at 694.

The Court next will address Mr. Cass' claims concerning his requests for alternate defense counsel.  To the extent he complains he was denied due process by the trial court's failure to address his request for alternate defense counsel after he sought to withdraw his guilty pleas (claim eleven) and that the trial court erred in failing to appoint alternate defense counsel for the habitual criminal phase of the trial, violating his right to due process (claim nineteen), these claims also are without merit.

A review of the record indicates that the trial court did not fail to address Mr. Cass' request for alternate defense counsel; rather, the trial court denied his request, finding that Mr. Cass "failed to present any indication, suggestion, that his [prior] conviction . . . is invalid, and therefore, has not suggested any reason why it should be investigated or he should be represented by a lawyer other than [his current attorney] of the Public Defender's Office."  Trial Tr. vol. VIII, Mar. 30, 2001, at 51.

As stated above and briefly summarized here, the Colorado Court of Appeals upheld the trial court's denial of his request for the appointment of alternate defense counsel because Mr. Cass failed to make specific allegations sufficient to support his request for conflict-free counsel.  The appeals court noted that his motion seeking alternative counsel did not explain why he failed to challenge the validity of his 1994 conviction before the three-year limitations period under state statutory law expired in 1997.  Noting that Mr. Cass was represented by conflict-free counsel on appeal, the

20

appeals court determined that he failed to suggest how the appointment of alternative counsel would have better enabled him to establish justifiable excuse or excusable neglect for his failure to challenge his prior conviction.

The Court does not find that the denial of alternate defense counsel rendered Mr. Cass' trial fundamentally unfair because the appointment of alternate defense counsel would not have assisted him in overcoming the fact that any challenge to his prior conviction was time-barred. *See Lisenba*, 314 U.S. at 236; *Tapia*, 926 F.2d at 1557. As such, Mr. Cass could not have been prejudiced by his counsel's failure to object to the trial court's refusal to appoint alternate defense counsel. *See Strickland*, 466 U.S. at 694.

The Court finds that the Colorado Court of Appeals' decision concerning Mr. Cass' allegations of trial court error was not contrary to *Lisenba*. The Court also finds that the state appeals court decision concerning Mr. Cass' claims of ineffective assistance of counsel was not contrary to or an unreasonable application of *Strickland*. Claims eleven, eighteen, and nineteen lack merit and will be dismissed.

<u>Claim Thirteen</u>

In his thirteenth claim, Mr. Cass alleges that he was denied due process based on his detrimental reliance on specific enforcement of the original plea agreement. For the reasons stated below, the Court finds the claim to be without merit.

The Colorado Court of Appeals made the following findings of fact concerning Mr. Cass' plea agreement:

> The agreement provided that defendant would plead guilty to one count of attempted first degree aggravated motor vehicle theft and two habitual criminal counts in one case, and to one count of forgery and two

21

> habitual criminal counts in the other; the remaining charges would be
> dismissed; and defendant's sentences in both cases would be concurrent
> with each other and with his sentence in a Montana case in which he had
> violated the conditions of his probation.

Answer, Ex. Q (No. 06CA1131), at 1.

The state appeals court also found that Mr. Cass wanted the Colorado

sentences to run concurrently with the Montana sentence and wanted to be allowed to

withdraw from his Colorado pleas if that could not be accomplished:

> At the providency hearing [tr., vol. V, 332-72, Sept. 7, 2000], the
> trial court expressed concern about whether the provision for concurrent
> sentencing in the Montana case could be implemented.  During the court's
> colloquy with defendant about his understanding of his rights, defendant
> stated: "You indicated that, it was my understanding, that all my time was
> going to be run concurrent with Montana?"  The court responded: "That
> was the Plea Agreement," and defendant replied: "Okay."  After further
> discussion about whether Montana would agree to concurrent sentencing,
> defendant asked: "If Montana's thinking – I come to the issue, would I be
> allowed to withdraw my plea in that since that was part of the plea
> agreement?"  The court responded:  "I think so," and the prosecutor
> affirmed that "that is part of the plea agreement."  The court subsequently
> imposed nineteen year prison sentences in both cases, concurrent with
> each other and with the Montana sentence.

> Approximately one month later, defendant filed pro se motions in
> both cases, followed by motions from his counsel, seeking to withdraw his
> guilty pleas on the basis that the plea agreement for concurrent Colorado
> and Montana sentencing could not be carried out.  The prosecutor
> opposed the request, stating that he was continuing to work with Montana
> authorities to implement concurrent sentencing.  However, the trial court
> granted the motions.  It concluded that the guilty pleas were conditioned
> on defendant's ability to serve the Montana sentence concurrently and
> that doing so was "now not possible."  The court accordingly ordered that
> defendant's guilty pleas be withdrawn and his earlier not guilty pleas
> remain in effect.

*Id.* at 1-2.

> [T]he record of the providency hearing . . . unequivocally
> establishes that defendant and both counsel understood that the

concurrent Montana sentence was a material term of the original agreement.

*Id.* at 7.

On the basis of these factual findings, the Colorado Court of Appeals made various conclusions.  Relevant here is the state appeals court's determination that:

> Defendant did not "detrimentally rely" on the agreement; rather, he sought and obtained rescission when it became clear that the agreement could not be implemented.  Moreover, the prosecutor did not breach the agreement, as defendant contends; rather, the prosecutor continued to try to implement the concurrent sentencing provision even after defendant moved to set the agreement aside.

*Id.* at 13.

State court findings of fact are presumed correct, and this Court must defer to those findings unless Mr. Cass overcomes that presumption by clear and convincing evidence.  *See* § 2254(e)(1); *see also Miller-El*, 545 U.S. at 240.  Because Mr. Cass has failed to rebut the presumption of correctness by clear and convincing evidence, claim thirteen is without merit.

Accordingly, it is

ORDERED that the second amended habeas corpus application is denied, and the action is dismissed with prejudice.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.

DATED February 22, 2011.

BY THE COURT:


 s/Philip A. Brimmer                                    
PHILIP A. BRIMMER
United States District Judge